FLOYD *v.* MANN.

1. STIPULATIONS—SET-OFF—ISSUES AND PROOF.

Where, in an action against a partnership for the price of a car-load of lumber, the parties execute a stipulation in writing that defendants shall have the right to set off any right of action one of them has had growing out of a contract between him and plaintiff and that no assignment of such right of action to defendants need be proved on the trial, the stipulation must be construed as permitting a counterclaim for non-fulfillment of the contract mentioned, though not otherwise admissible under any plea and notice that could be devised; and a contention that the effect of the stipulation was merely to permit proof of any claim well pleaded, without proof of assignment, is untenable.

2. SALES—CONTRACT—ESSENTIALS—MEETING OF MINDS.

Certain letters and telegrams relied upon to show a contract for the sale of five cars of lumber examined, and *held,* to show a clear meeting of minds entitling the purchaser to the goods as claimed, notwithstanding a short delay in forwarding shipping directions and subsequent requests for slight variations not insisted upon.

3. EVIDENCE—SALES—CUSTOM—ADMISSIBILITY.

On the question of damages for nondelivery of five car loads of lumber as agreed, evidence is admissible to show of what a car load of lumber of the kind in question usually consists.

4. SALES — BREACH OF CONTRACT — FAILURE TO DELIVER— DAMAGES.

For failure to deliver goods as agreed, the measure of damages is the difference between the contract price and the market value at the time and place of delivery.

Error to Muskegon; Russell, J. Submitted October 10, 1906. (Docket No. 48.) Decided November 13, 1906.

Assumpsit by John F. Floyd, doing business as the J. F. Floyd Lumber Co., against Robert K. Mann and William G. Watson, copartners as Mann, Watson & Co., for goods sold and delivered. There was judgment for de-

fendants on a verdict directed by the court, and plaintiff brings error. Affirmed.

*Nims, Hoyt, Erwin & Vanderwerp*, for appellant.

*William Carpenter*, for appellees.

HOOKER, J.    The plaintiff brought this action in assumpsit to recover the price ($152.98) of a car load of lumber purchased from him by the defendants. The defendants did not deny his claim for the car of lumber, but sought to set off against it a claim for damages, arising from a failure to deliver other lumber which the defendants claim to have been contracted for, by Robert K. Mann, one of their number. The learned circuit judge directed a verdict for the defendants, and judgment for $161.86 was rendered. The plaintiff has brought the case to this court by writ of error.

The questions argued are four:

(1) That the evidence offered to prove defendant's claim was not admissible under the pleadings, for the reason that the claim was not a proper subject of set-off.

(2) That it was error to admit evidence that it was the custom to order lumber by car loads, and as to what constitutes an average car of lumber.

(3) That the court erred in his charge upon the measure of damages.

(4) That the evidence failed to establish defendants' alleged contract.

*The Stipulation.*    The plea was the general issue, with notice of a claim for damages from the failure of plaintiff to deliver to Robert K. Mann five car loads of lumber, which he had contracted to deliver to him, which claim and the cause of action therefor said Mann had assigned to the defendants. It is conceded that this testimony was not admissible under this plea and notice standing alone, but it is said to have been properly admitted under the following stipulation, viz.:

"STATE OF MICHIGAN.
" The Circuit Court for the County of Muskegon.
"JOHN F. FLOYD,
        " Plaintiff,
                v.
" ROBERT K. MANN and
" WILLIAM G. WATSON,
        " Defendants.

" It is hereby stipulated that on the trial of this cause the above-named defendants shall have the right to set off against the claim of the plaintiff any right of action which the defendant Robert K. Mann has or has had growing out of a contract alleged by him to have been made between him and the plaintiff, under the name of the J. F. Floyd Lumber Company, on or about the twenty-fourth day of December, 1900, for the sale to him of five car loads of pine lumber, and that no assignment of said right of action to the defendants prior to beginning of this suit need be proved on said trial.

" Dated February 21, 1905.
                " WALTER I. LILLIE,
                        "Attorney for Plaintiff.
                " WM. CARPENTER,
                        "Attorney for Defendant."

The plaintiff's counsel contend that this stipulation should be construed to mean that this right to set off the claim mentioned was to be qualified by an implied proviso that there was a proper pleading to justify it; or, in short, it is contended that this stipulation merely waived proof of the assignment of the claim. To so hold would be to treat all but the last three lines of the stipulation as surplusage. We are of the opinion that this stipulation was broad enough to permit the defendant to make a counterclaim of this item, although not otherwise admissible as a defense under any plea and notice that could be devised; it being the plain intent of the plaintiff to consent to the settlement of their differences in this one suit.

*The Contract.* The alleged contract is in writing, being contained in certain letters and a telegram. It was therefore proper for the court to determine whether they amounted to a contract or not. The plaintiff's offer was contained in a letter to Mann, dated December 14, 1900.

In substance, it offered one to five cars of lumber for shipment as fast as transportation could be obtained, in "1x6 to 1x12 inch assorted, good proportion of 1x8, 1x10, and 1x12. 10 to 16, proportion of 10 very small, 75 to 85 per cent. 1st and 2d clear, balance good 3 clear Arkansas kiln dried short leaf rough yellow pine finishing at $21 per 1,000, f. o. b. your station [Muskegon, Mich.], settlement as per terms printed above on arrival of each car. This quotation for immediate acceptance by return mail only." An answer, dated December 19, 1900, declined the offer, but on December 20th, Mann wired, "Have sold the five cars finish lumber, per letter 14, consigned South Bend Indiana. See letter."

December 21st, Mann wrote as follows:

"Dec. 21, 1900.

"J. F. FLOYD LUMBER CO.,
          "Texarkana, Ark.

"*Dear Sirs:* I wired you late yesterday afternoon stating that I had sold five cars finish lumber as per your letter of the 14th. Those are to be consigned to So. Bend, Ind. I figured this rate as being 26c which would make the lumber $1.00 less than what it would be if shipped to Muskegon. Did I figure it correctly? I received word from there by telephone and they stated that the regular order would follow by mail. I have not received the same yet but will expect to so as to forward the same to you tomorrow.

"Trusting this to be satisfactory, I am,

          "Yours truly,
                    "R. K. MANN.

"P. S. All of the cars will not need to be shipped at once. You can do so at your convenience but I probably would want one or two of them to go as soon as possible."

Plaintiff sent the following letter:

"12—22—1900.

"R. K. MANN,
          "Muskegon, Mich.

"*Dear Sir:* We have no objection to shipping the five cars of rough finish so that they will reach destination at intervals during the next 60 or 90 days, but each car must be settled for promptly on arrival.

"So many instructions have been received from you

that we wish you would send us by return mail an order for the five cars of finish in accordance with ours of the 14th inst., the first car to be loaded at once, and the remaining four to go during January and February, barring all unavoidable delays.

"Your car I. C. 8479 passed Effingham Ill. on Dec. 22nd, and should have reached you on the day of your letter.

"You understand this five car deal is between ourselves, and your South Bend customers understanding with you, must have nothing to do with our trade with you unless submitted with order and agreeable.

"Our finish is all right in every respect. We sell it in Detroit, Lansing, Kalamazoo, Toledo, and other places where it would not go unless it were well manufactured and dry.

"Awaiting your reply, we remain,
            "Yours truly,
                "THE J. F. FLOYD LBR. CO.,
                        "By E. J. K."

Apparently this was not an answer to Mann's letter of December 21st, for on December 24th plaintiff wrote:

                            "12—24—1900.
"R. K. MANN,
        "Muskegon, Mich.
    "*Dear Sir:* Your favor of 19th and 21st inst. and telegram of 20th all received, and enter your order for five car loads finishing lumber, in accordance with our quotations of the 14th inst., except that we make the price for delivery at South Bend $20.00 instead of $21.00.

"We quote our finish in most of the principal Michigan, Indiana, and Ohio cities, but if you can furnish us orders for certain points we will not make quotations in conflict with yours.

"Our prices on dress finish do not correspond with special prices on car loads of rough stock. Thanking you for favors received, we remain,
            "Yours truly,
                "THE J. F. FLOYD LBR. CO.,
                        "By E. J. K."

Here was a clear meeting of the minds of the parties upon the five cars of lumber, of the character described in plaintiff's first letter, to be shipped to South Bend, Ind.,

at plaintiff's convenience, one or two cars as soon as possible, at $20 per 1,000 feet.

On December 24th Mann wrote, stating that he would like to have one of the cars shipped to him at South Bend at once. He added that he had not heard from plaintiff in response to his telegram or letter, but presumed that everything was all right for the shipment of the five cars. On the 26th of December plaintiff answered that he was only waiting for empty car "to load the first of your five cars of finish to So. Bend." It again called attention to the terms of the offer of December 14th, and expressed the hope that there were no instructions in Mann's "regular order" to conflict therewith. December 27th Mann wrote asking some delay in shipment of the five cars to accommodate South Bend customers.

On January 5th the following letter was sent by Mann:

"Jan. 5, 1901.

"J. F. FLOYD LUMBER CO.,
        "Texarkana, Ark.

"Gentlemen: Your favor of the 28th inst. is at hand. In regard to the orders for yellow pine would say that the one order is plain enough, and that is to ship to South Bend, Ind. I expect within the next few days to be in position to give the orders for the balance a little more intelligently than what I can do just at the present time. Kindly ship this one car as soon as possible, and I will try and send the other orders at least as soon as it will be convenient for you to ship the stock, which I trust will be entirely satisfactory."

What called out this letter is not clear, as letter of December 28th is not in the record.

Again plaintiff wrote:

"January 7th, 1901.

"R. K. MANN,
        "Muskegon, Mich.

"Dear Sir: Your favor of the 5th inst. to hand. Regarding the proposed five car order, we quoted you five cars finish at $21, delivered your city, and you wired us that you had sold five cars in South Bend, following this by mail with questions as to time of shipment, and

stating regular order would follow within a day or two.

"We have no order from you in fact except one car to be shipped you at South Bend, at $20 per thousand. Have been waiting for settlement of the matter. Two cars can go forward at once as soon as empties are placed for them, but we do not wish to ship even one car until you advise fully by return mail whether you intend to order the other four cars, and, if so, within what time they may go forward. If we do not hear from you by return mail with order for the four additional cars to be shipped within sixty or ninety days, we shall have to refuse to make good the quotation, as we are now getting more money for our finish.

"Yours truly,
"THE J. F. FLOYD LBR. CO.
"By E. J. K."

Mr. Mann replied:

"Jan. 8, 1901.

"J. F. FLOYD LUMBER CO.,
"Texarkana, Ark.

"*Gentlemen:* Inclosed I hand you order for 20,000 ft. of clear finish lumber. I have made this up in two car loads, as I am desirous of having all of the order shipped, and thought it would be too much for one car; however, you can convenience yourself regarding same.

"I trust you will be able to furnish the 5 and 6-4 as stated, and that prices are satisfactory.

"Will you kindly let me know if it will be possible for me to get lumber of this kind dressed from you there, and if prices would be the same on it?

"Regarding the other cars, I will know as to the shipping conditions of these within a day or two, and will advise you fully. Kindly acknowledge receipt of inclosed order, and oblige,

"Yours truly,
"R. K. MANN."

And again:

"Jan. 9, 1901.

"J. F. FLOYD LUMBER CO.,
"Texarkana, Ark.

"*Gentlemen:* Your favor of the 7th is at hand this evening. I do not want you to feel any question but what I will take the five cars of finish lumber. I thought I had

written you definitely about this, since you agreed to hold them 60 or 90 days. I expect to furnish the orders very soon. They may not all go to South Bend, but if I ship elsewhere I presume that it is all the same to you. My customer at South Bend expects to take them, but as I had thought they might not allow me to ship in time to suit you, I thought I might ask you to ship elsewhere one order for which I sent you last night to go to Jackson, Ohio. Concerning the car shipped to me, I am ready to send the check in settlement at any time, and have tried to get the railroad company to correct the expense bill today. My experience is that the best time to have this done is before the freight is paid.

"Yours truly,
"R. K. MANN.
"P. S. The order mentioned above should be D. Jackson & Co., Barberton, Ohio, instead of Jackson, Ohio."

The correspondence continued as follows:

"1—10—1901.
"R. K. MANN,
"Muskegon, Mich.
"Dear Sir: We return herewith your orders of the 8th inst., and regret to advise that we cannot accept them at the prices offered. The fact is we have all the finishing orders we can handle conveniently at present, and the proposed order for five cars must be placed with us by the last of this week, or the deal must be considered off. We thank you, however, for the tender of the present business, and hope you will succeed in finding the stock elsewhere.

"Yours truly,
"THE J. F. FLOYD LBR. CO.,
"By E. J. K.
"Mr. Mann: This one that was refused, the order of January 8th, was the Barberton car."

"1—12—1901.
"R. K. MANN,
"Muskegon, Mich.
"Dear Sir: Your favor of 10th inst. at hand. The form of remittance would have been very satisfactory if your check had been signed. We inclose it herewith to you for signature—your number 1044, dated Jan'y 10, amount $113.46. We will put in claim with Vandalia line for the overcharge, but if your agent should refund the amount you may advise, and remit. Sorry to state

that we cannot handle the bill of ceiling just now having considerable orders for common ceiling and not making 3″ clg. Awaiting your reply with signed check, we remain,

"Yours truly,
"The J. F. Floyd Lbr. Co."

"Jan. 12, 1901.

"J. F. Floyd Lumber Co.,
"Texarkana, Ark.

"*Gentlemen:* Yours of the 10th inst. is at hand, with the orders returned as stated. One of these orders was sent on the basis of the five cars which I ordered. It varies only in the fact that it calls for 8, 10, and 12 inch. However, if you will fill this and insist upon putting in the proportion of 4 and 5 inch I would like to ask that you lay it out of this car and I will take it in another one. You can put it into the car which you are now shipping to South Bend. In regard to the five cars I presume you received my letter whereby it is explicitly stated that I will take them all in accordance with your letter if I ship them within the 60 or 90 days allowed. I will endeavor to furnish orders to your entire satisfaction.

"Trusting the same to be satisfactory; I am,

"Yours truly,
"R. K. Mann."

"Jan. 14, 1901.

"J. F. Floyd Lumber Co.,
"Texarkana, Ark.

"*Gentlemen:* I am very sorry concerning the omission of the signature to this check. I return the same hereby duly signed.

"I note what you say in regard to the claim, and I will be governed accordingly. I note also what you say in regard to the bill of ceiling. I wish I could understand clearly what I might do with you in the line of yellow pine orders. I have business that is offered to me continually, but have been refusing it on account of not knowing a way to handle it. I returned one of the orders to you, inasmuch as I thought that it could apply on the five car load order. I presume you are shipping the one car that is ordered to go to South Bend.

"Hoping that you will get this out for me as quickly as possible, I am,

"Yours truly,
"R. K. Mann."

"1—15—1901.

"R. K. MANN,
      "Muskegon, Mich.

"*Dear Sir :* Returning your order for Barberton, Ohio, would state that it cannot be accepted. It is not in any respect applicable on our quotation of December 14th.

"If you want one car now in transit shipped to South Bend, we must ask you to furnish order for it by return mail, based on our quotation of December 14th, and this is all that we can furnish you on said quotation, which was made you for immediate acceptance by return mail. You have advised a time or two that you had sold stock which would enable you to give us orders for the five cars, saying that the orders would follow, but they have not been received, and in justice to ourselves we cannot hold the quotation open any longer.

"Awaiting your reply, we remain,
          "Yours truly,
            "THE J. F. FLOYD LBR. CO.,
                "By E. J. K."

"1—16—1901.

"R. K. MANN,
      "Muskegon, Mich.

"*Dear Sir :* Your favor of the 14th inst., with check $113.46, is received, and the amount is credited to balance account.

"The situation with regard to yellow pine is this: The market is advancing, the mills are full of orders at good prices, and stocks are generally broken. We are not taking orders for anything low in stock, and have very little to offer just now.

"We wrote you yesterday in answer to one of your letters regarding the shipment of one car to South Bend, Ind. It may seem to you a lot of delay and correspondence about one car load of yellow pine, but we find that it is better for all parties concerned to have no misunderstanding where stock passes through two or three hands. Our quotation to you was for a percentage of third clear, and if you have sold first and second clear to your South Bend customer there might be some trouble. We noticed that the Barberton order called for clear rough finish.

"Yours truly,
      "THE J. F. FLOYD LBR. CO.,
          "By E. J. K."

"1—17—1901.

"R. K. MANN,
    "Muskegon, Mich.

"*Dear Sir:* Your South Bend car, as previously advised, has gone forward, and, not doubting that it will be all right, we inclose herewith invoice for the same. In the meantime we suppose you will have sent us the straight out order for the car. We think it is nicer stock than we shipped you at Muskegon.

                    "Yours truly,
                        "THE J. F. FLOYD LBR. CO.
                            "By E. J. K."

"Jan. 18, 1901.

"J. F. FLOYD LUMBER CO.,
        "Texarkana, Ark.

"*Gentlemen:* Yours of the 15th inst. is at hand. I have not interpreted your letters to mean according to what you have stated. As I understand now, you are shipping for me one car of finish lumber to go to South Bend, Ind. If my letters have not been sufficiently plain to convey this meaning, I inclose a direct order herewith, to be shipped in accordance with the quotation you made me on December 14th. Kindly let me know if you can ship this one at once. I had sold the five cars in South Bend, but they did not want them shipped right away, but as you stated that you would ship them within 60 or 90 days I supposed it was settled. I do not understand why you want to return the order for Barberton, Ohio, as it is the same rate as Muskegon, and the only difference is that it specifies 8, 10, and 12 inch. I would not mind if you do put in some 4 and 6 inch, and you can ship the same grade as you sent to me. I change the order in this respect and return it herewith, hoping that it will be satisfactory.

                    "Yours truly,
                        "R. K. MANN."

"Jan. 19, 1901.

"J. F. FLOYD LUMBER CO.,
        "Texarkana, Ark.

"*Gentlemen:* Yours of the 16th inst. is at hand. I presume that my letter of yesterday will make clear my present attitude in regard to orders, and sincerely wish that what has been sent forward will be accepted on the basis of your letter of December 14, 1900, as stated. I do not

wish to convey to you the idea that I would expect anything different from what you had written in that letter.

"Trusting the same to be satisfactory, I am,

"Yours truly,

"R. K. MANN."

"Jan. 21, 1901.

"J. F. FLOYD LUMBER CO.,

"Texarkana, Ark.

"*Gentlemen:* Inclosed I herewith hand you orders for the remaining cars of clear finish lumber, which you can ship at once or at your earliest convenience.

"One of my salesmen has just returned from a trip, and in seeing the customers they have arranged to take care of them now, or as soon as you can ship them. In their letters to me they stated they would take them inside of the 60 days, but, as they have agreed to have them come forward at this time, I trust you will see that they are gotten off as soon as possible.

"Yours truly,

"R. K. MANN."

"1—21—1901.

"R. K. MANN,

"Muskegon, Mich.

"*Dear Sir:* We inclose invoice herewith for your South Bend car of finish, of which kindly acknowledge receipt.

"Your favors of the 18th and 19th inst. are received with order for Barberton, Ohio, returned to us again. Now, it is not because we doubt your fairness that we do not want to ship the Barberton order, but because from your own correspondence you are not familiar with yellow pine trade, and because you have sold your Barberton customer, according to the original order, a car load of 1x8, 10 and 12 inch clear rough finish, whereas our offer is 1x6 to 1x12 inch clear, partly 1st and 2d clear and a proportion of 3d. clear. If we should follow your suggestion and put in stock not wanted by your customer, there would be dissatisfaction sure, not only because the grade was not as ordered, but on account of the 6 inch not ordered. If you guarantee us against claim for rebate, we will send the car to you at Barberton on a basis of quotation of Dec. 14th.

"Awaiting your reply, we remain,

"Yours truly,

"THE J. F. FLOYD LBR. CO.,

"By E. J. K."

"1—24—1901.

"R. K. MANN,
        "Muskegon, Mich.
    "*Dear Sir:* Notwithstanding what we wrote you, yours of the 21st is to hand with more orders for finish. We return them herewith, also the Barberton order, and will ask you to destroy or return our invoice for I. C. No. 15,950, which we have diverted en route.
                    "Yours truly,
                        "THE J. F. FLOYD LBR. CO.,
                                "By E. J. K."

"Jan. 31, 1901.

"J. F. FLOYD LUMBER CO.,
                "Texarkana, Ark.
    "*Gentlemen:* I am in receipt of your letter returning the orders, as stated. You request also that I return the invoice for the car that was shipped, as you had diverted same in transit. Will you kindly let me know why you have done this? You must have some reason for it, and I have hardly expected this of you. Now if I am to return the invoice, I feel that I must demand of you what profit there is to me on the car. Do you mean that you have refused to fill this order, and have canceled the bill of lading, and sold the stock elsewhere? Do you refuse to fill the order which I have already invoiced to my customer at South Bend, who certainly will look to me to ship the stock. Kindly let me hear from you in explanation.
    "I sent in the four orders because I thought you demanded that they should be in your possession, and I tried to make them out in accordance with your letter of December 14th, and with the view that I would take all the responsibility of any kicks, just so that you gave me lumber equally as good as what you shipped to me here.
    "Kindly let me hear from you, and oblige,
                    "Yours truly,
                        "R. K. MANN."

As we have already stated, we are of the opinion that the minds of the parties met upon the basis of the letter of December 14th, as modified by a change of destination to South Bend, and price to $20. The plaintiff had a contract right to ship to South Bend at any time, and, while he had the right to refuse to ship anywhere else, he

was not released from his contract to ship to South Bend, nor did Mann's short delay in sending shipping directions justify him in abandoning or refusing to perform the contract.   Mann's requests for variance from its terms were not a breach of the contract on his part.   The letter of January 9th shows that Mann recognized his obligation to take lumber at South Bend if plaintiff insisted upon it, and this is reiterated in his letter of January 18th.   He was entitled to performance of the contract, and, failing that, to damages if he sustained any.

*Custom.*   It will be remembered that this contract was for five car loads of lumber.   It was necessary to determine what was meant by a car load of lumber.   There was no other way of ascertaining except to show what a car load of lumber of this kind ordinarily consisted of. We think that the objection to the evidence of the common usage was properly overruled.

*Measure of Damages.*   Under a notice claiming damages for loss of profits, the defendant offered evidence of the value of the lumber at South Bend at the time he should have received it, and that he was obliged to pay that price to supply his customers.   It is contended that the measure of damages should not have been the difference between the price he had contracted to pay to the plaintiff, and the market price at South Bend, but the difference between the price he had contracted to sell it for and the purchase price he had agreed to pay.   No objection was made to the evidence, nor was any request to charge offered indicating any other rule than that claimed by the defendant.

It is said by counsel, by way of illustration, that it may be that defendant had contracted to sell this lumber for $21 per 1,000 feet, and in such case his damages would be only the difference between the purchase price (i. e., $20) and the contract price of sale (i. e., $21).   This is fallacious, for if he was obliged to pay the market value, his actual loss would be the difference between $20 and the price he was obliged to pay.   This contention is made to

rest upon the notice that alleges that he lost the profits that he would have made on a resale of the lumber. His right to recover damages does not, under this notice, depend upon his having or not having made a specific contract for this particular lumber. It does not predicate his claim upon an alleged sale, and limit it to that. Whether he had contracted it to some one else or not, he certainly did not deliver it, and whether this was due to the plaintiff's failure to furnish or his own deliberate refusal to deliver, it must be clear that he could have sold the lumber to others, and presumably have obtained the market price.

We find no error in the record, and the judgment is affirmed.

GRANT, BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.