SHEPHERD HARDWOOD PRODUCTS CO. *v.* GORHAM BROTHERS CO.

1. FRAUDS, STATUTE OF—CONTRACTS—OFFER AND ACCEPTANCE IN WRITING CONSTITUTES CONTRACT.

Where defendant made plaintiff an offer to accept any amount up to 200,000 feet of hard maple logs, a minimum amount of 75,000 feet to be delivered before June 1st, and plaintiff, before accepting, called defendant on the 'phone, and secured its consent to change the date for delivery of the minimum amount from June 1st to July 1st, which was incorporated in its written acceptance, a contract fully complying with the statute of frauds was completed.

2. CONTRACTS—SUGGESTED CHANGES NOT AGREED TO NO MODIFICATION OF EXISTING CONTRACT.

Where a completed contract was made by offer and acceptance in writing, a subsequent letter from defendant

suggesting certain changes in the contract, to which plaintiff replied that it was willing to sign a new contract if submitted and if satisfactory, but nothing further was done, said letters, *held*, not to constitute a modification of the contract already made or a new contract superseding it.

3. LOGS AND LOGGING—CONTRACTS—INTERPRETATION.
    Where plaintiff accepted defendant's offer to take "any amount" of beech and elm logs "you are in position to furnish," in order to ascertain the intent of the parties the entire contract should be considered, and also the relations of the parties, their connection with the subject-matter of the contract, and the circumstances under which it was signed.

4. SAME—SURROUNDING CIRCUMSTANCES TO BE CONSIDERED.
    In view of the fact that defendant's employee had looked over a tract of hardwood timber owned by plaintiff with a view to purchasing such logs as were suitable for defendant's use, its offer to take a definite amount of maple logs, and any amount of beech and elm logs plaintiff was in position to furnish, *held*, to mean such logs as were suitable as might be cut from said tract, and although the quantity of beech and elm logs was not then ascertainable it would be made so by the quantity of maple furnished.

5. SAME—CONTRACTS—WANT OF MUTUALITY REMEDIED BY PARTIAL PERFORMANCE.
    If, under the contract, plaintiff was not bound to furnish any amount of beech and elm logs for want of mutuality, yet, if it did in fact furnish some pursuant to the contract, it then became bound to furnish all it was in a position to furnish.

6. SAME—EVIDENCE—HARMLESS ERROR.
    Although it was competent for plaintiff to show its ability to buy standing timber to fill its contract with defendant, deeds of timber lands to plaintiff's officers were not admissible to show title in plaintiff, but in view of the fact that its ability to furnish the maximum quantity of logs called for was not questioned, the admission in evidence of said deeds, *held*, not prejudicial.

Error to Isabella; Hart (Ray), J.    Submitted Oc-

tober 24, 1923.   (Docket No. 96.)   Decided December 19, 1923.

Assumpsit by the Shepherd Hardwood Products Company against Gorham Brothers Company for breach of a contract for the sale of certain logs.   Judgment for plaintiff.   Defendant brings error.   Affirmed.

*F. H. Dusenbury* and *Joseph Schnitzler,* for appellant.

*Searl & Searl* and *Dodds & Dodds,* for appellee.

SHARPE, J.   On March 30, 1920, defendant wrote plaintiff, offering to purchase certain "No. 1 surface clear veneer logs, * * * size to be 14 inch and up in diameter at the small end," at the following prices per thousand feet: hard maple, $100; beech, $90, and grey elm, $100.   The letter concluded:

"We agree to take any amount up to *200,000* of hard maple logs.   You agree to furnish at least 75,000 feet hard maple logs, and *any amount of the others you are in position to furnish.*   At least the minimum amount of hard maple to be delivered to us before June 1st."

On receipt of this letter, plaintiff's secretary called defendant's vice-president, C. A. Gorham, who had signed it, on the telephone and secured his consent to change the date fixed for delivery of the minimum amount of maple from June 1st to July 1st.   He thereupon made such change, signed an acceptance of the offer, which had been made in duplicate, and returned a copy to defendant.   Mr. Gorham testified that he consented to the change upon the express condition that a further change be made in the offer limiting the maximum quantity of maple to 100,000 feet and fixing October 1st as the time limit for delivery thereof.   This was disputed by plaintiff's secretary.

It appears, however, that on April 5th Mr. Gorham for defendant wrote plaintiff as follows:

"As talked over the 'phone with your Mr. Miller we have changed our agreement to read 'Minimum amount of hard maple to be delivered before July 1.' That was satisfactory to you.   Now, in order to make it satisfactory to us we ask that you make the amount 200,000 of hard maple logs to read 100,000 and add also that the maximum amount be delivered before October 1st."

To this plaintiff replied on April 9th:

"Make out a contract which is satisfactory to you and send it along and if it is O. K. we will sign and return it to you.
"We do not want to tie you up on anything that is not satisfactory to you, as we figure that any deal which is not satisfactory to both parties will not be satisfactory to either before it is closed."

To this letter defendant made no reply.   Plaintiff delivered 75,249 feet of maple, 7,890 feet of beech and 9,442 feet of elm from time to time and was paid for it at the prices stated in the letter.   On October 6th defendant wrote plaintiff:

"Do not make further shipments of logs to us until we so advise you.   We are obliged to take this step owing to the fact we have received several cancellations.   We are now checking up the amount of logs received from you since last contract for 100,000 feet maple, as we believe this contract has been completed."

The parties met and discussed the matter a few days later.   On October 11th defendant wrote plaintiff:

"Referring further to the conversation Mr. C. A. Gorham had with Mr. C. W. Fuller, and Mr. Miller, wish to say that as per conversation, it will be satisfactory for us to have you ship approximately 12,000 feet of hard maple logs which you now have on the track ready for shipment providing, however, you are willing to make some concession in price as outlined by Mr. Gorham.   Mr. Gorham fully explained

to you we believe the circumstances which have brought about the present conditions and we do not believe it is quite fair to you to have to take reduction in price on these few logs you have at the track, which we expect to take, therefore, we feel if you will bill these in at about $85.00 per M. feet it will be entirely satisfactory.  If you feel you care to do this we will be glad to have you make shipments immediately, otherwise we will have to ask that you do not ship them.    Then after these logs are shipped or held up as you definitely decide upon, we will consider that this deal is closed and the matter of future logs will of course have to be taken up at revised prices. Trusting that we may hear from you at an early date so we may know whether or not to expect shipment of these logs in the next week or so, we are,"

To this plaintiff replied:

"Replying to yours of yesterday we will say that in your contract with us you obligated yourselves to take two hundred thousand feet of hard maple logs at $100 per thousand feet and we must further say that we will have to insist upon your doing so.    We have expected to deliver this amount to you and have governed ourselves accordingly."

On October 16th defendant's attorney wrote plaintiff:

"Since seeing Mr. Miller earlier in the week, I took up with my clients, the Gorham Brothers Company of this city, the matter of purchasing more logs of you under a new contract of sale and purchase.

"I must advise you, as I advised them, that in my opinion it will be legally impossible for you to compel the Gorham Brothers Company to accept more logs of you under the memorandum of agreement dated March 30th.

"It was the essence of that agreement that certain quantities of hard maple logs were to be delivered before July 1st.    Had such been done, my clients could have realized on the sale of the finished product as they had planned.    The rapid decline of prices, however, makes tardy delivery an increasing loss to them.

"Under these conditions, the Gorham Brothers Com-

pany cannot accept any more logs of you even at $85.00 per M. feet.    We are able to obtain sufficient quantities of hard maple, beech, elm and basswood at from $50.00 to $75.00 per M. feet f. o. b. shipping point."

Claiming that it was compelled to sell the logs defendant had contracted to take at a price much less than that agreed upon, plaintiff sued to recover for such loss.    It had verdict for $4,000.    Defendant here reviews the judgment entered thereon by writ of error.

1. It may be said at the outset that no claim was made by defendant at the trial, or is here made, that the written offer of defendant and its acceptance by plaintiff did not constitute a binding contract in writing.    The fact that the date for minimum delivery was changed by plaintiff from June 1st to July 1st is not urged as affecting its validity in any way.    Defendant's claim is thus stated in its fifth request to charge:

"I charge you that letters passing between the parties may constitute a completed contract, even though said letters contain the request or suggestion that the terms of the agreement be put into a more formal contract, which was never done. * * *
"Therefore, in this case, if you find that the letter of March 30, 1920, and the letter of April 5th, and the letter of April 9th, all taken together express a mutual understanding upon which the minds of all parties met, then you have the right to find that such correspondence constitutes a contract, even though its terms were never later incorporated in a more formal contract, as suggested in the letter of April 9th."

In its seventh request it asked an instruction that if the jury found that the original contract was modified by the letters of April 5th and 9th, such modified contract superseded that first entered into and was the only one binding on the parties.    The court instructed the jury that the minds of the parties must have met in order to make a binding contract

and unless they did meet in the offer from defendant to plaintiff of March 30th and its acceptance by plaintiff with the date for minimum delivery changed, plaintiff could not recover.   At the conclusion of the charge, counsel for defendant, in response to a query of the court, said:

"I think I requested the court to charge what the law is on the meeting of the minds.   I don't think you covered that,"

whereupon the court said:

"I told them if their minds met on a contract.   They must agree on a contract, that is, it must be a mutual agreement between the minds.   There is no contract between them unless the minds of the parties met upon a mutual and identical understanding."

The contract for the purchase and sale of this lumber was such an one as the statute requires to be in writing and "signed by the party to be charged, or his agent in that behalf."   3 Comp. Laws 1915, § 11835.   Defendant claims that it yielded its assent to the change of date only on condition that the maximum amount should also be changed.   In its letter of April 5th there is no suggestion that it made such a request over the telephone and the jury were warranted in finding that no such request was made.   We therefore have a contract in writing fully complying with the statute when plaintiff's letter of acceptance was mailed to defendant.   In its letter of April 5th, defendant requested a modification and plaintiff in its reply of April 9th expressed its willingness to sign an acceptance of a new offer if submitted by defendant and satisfactory to plaintiff, but no such offer was made.   It seems clear to us that these letters did not constitute a modification of the contract already entered into or a new contract superseding it.   Plaintiff in its letter but expressed its willingness to enter

into a new contract containing the changes proposed by defendant "if it is O. K." No further action having been taken by defendant, we think plaintiff was justified in proceeding to perform under the contract entered into. The letters presented no issue of fact for submission to the jury. *Floyd* v. *Mann,* 146 Mich. 356; *International Text-book Co.* v. *Roberts,* 168 Mich. 501.

2. Defendant requested an instruction that no recovery could be had for defendant's failure to accept beech and elm as there was no binding agreement to furnish or to take any specified quantity of these logs. In defendant's letter it offered to take "any amount of the others" (beech and elm) "you are in position to furnish." This language is capable of more than one interpretation. It might be said to mean, such beech and elm logs as plaintiff might cut when lumbering the lands on which he was to secure the maple contracted for, or such beech and elm logs of the quality and size specified as plaintiff might be able to purchase during the time limited for delivery. To ascertain the intent of the parties, we must therefore examine the entire contract and we may also consider "the relations of the parties, their connection with the subject-matter of the contract, and the circumstances under which it was signed." *Chicago, etc., R. Co.* v. *Railroad Co.,* 143 U. S. 596, 609 (12 Sup. Ct. 479) ; *E. G. Dailey Co.* v. *Clark Can Co.,* 128 Mich. 591; 2 Williston on Contracts, § 629 *et seq.* Plaintiff was engaged in purchasing timber lands, cutting the timber into logs and disposing of them. It owned a small tract of hardwood timber. An employee of defendant had looked it over. He wanted to purchase such logs as were suitable for defendant's use. Plaintiff wrote defendant asking that it put its offer in writing. The letter of March 30th followed. Scattered among the maple were beech and elm trees.

It seems clear that the understanding of the parties was that defendant should take such beech and elm logs of the size and quality stated as might be cut from these trees. Viewed in the light of these circumstances, which it is apparent were in the minds of the parties at the time the contract was made, a definite quantity of beech and elm logs was contracted for, the amount of which, though not then capable of ascertainment, would be made so by the quantity of maple furnished. The reasoning in *E. G. Dailey Co. v. Clark Can Co.*, *supra*, is applicable to the facts here presented. Other cases in which somewhat similar questions were involved, and in which the contract was held to be enforceable, are *Cooper* v. *Lansing Wheel Co.*, 94 Mich. 272 (34 Am. St. Rep. 341), and *Hickey* v. *O'Brien*, 123 Mich. 611 (49 L. R. A. 594, 81 Am. St. Rep. 227). The *Cooper Case* is authority for the doctrine that if in such a contract there is no obligation on the part of the plaintiff to furnish at all, and the contract therefore unenforceable for want of mutuality, yet, if it did in fact furnish beech and elm pursuant to the contract, it then became bound to furnish all it was in a position to furnish. It was said:

"If it be held, as we think the correct doctrine is, that an offer to furnish such goods as the plaintiff may want within a stated time may, upon acceptance by the offeree before withdrawal, constitute a valid contract, it is difficult to see why, if the offeree orders any portion of the goods, and the offerer has the benefit of the sale, the entire contract may not become valid and binding. This certainly would constitute a sufficient consideration. If in the present case the defendant had, in consideration of the present sale and delivery to the plaintiffs of one lot of wheels at a stated price, and for which the defendant received its pay, further agreed to furnish such further quantity of wheels as the plaintiffs might desire during the season, it would seem that a purchase of the one lot, as offered,

225—Mich.—30.

would afford a sufficient consideration for defendant's undertaking."

3. Plaintiff's proofs showed that at the time defendant refused to accept further shipments it had on hand for delivery from 12,000 to 15,000 feet of maple. It sought to show its ability to perform to the maximum fixed in the contract by proof that two of its officers had made certain purchases of standing timber for and in its behalf. Error is assigned on the reception of these timber deeds in evidence and the proof that the timber on these lands was available to plaintiff to enable it to perform its contract with defendant. It was certainly competent for plaintiff to show its ability to purchase standing timber to fill its contract. *Thick* v. *Railway*, 137 Mich. 708 (109 Am. St. Rep. 694). Plaintiff might have shown that it had made arrangements to secure this timber without offering the deeds in evidence. Counsel for defendant in their brief say:

"Had plaintiff taken the proper method of supplying its proofs on this branch of the case it probably could have done so in a way that was not objectionable."

Plaintiff need but have shown that the grantees were ready and willing to sell to plaintiff. While the deeds were not admissible to show title in plaintiff, we are persuaded that no reversible error resulted from their admission. Plaintiff's ability to perform seems not to have been seriously questioned.

In view of what has been said, we do not think it necessary to discuss the other errors assigned.

The judgment is affirmed.

WIEST, C. J., and FELLOWS, McDONALD CLARK, BIRD, MOORE, and STEERE, JJ., concurred.